UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

2408 W. Kennedy, LLC,

    Debtor.
_____/

Case No. 8:13-bk-10798-MGW
Chapter 11

## MEMORANDUM OPINION ON LEASE TERMINATION

The Debtor's commercial landlord purportedly terminated the parties' lease agreement based on a cross-default provision and then sued to evict the Debtor from the premises. The landlord obtained a final judgment for possession and a writ of possession. But the Debtor filed for bankruptcy before the writ of possession was executed. This Court must decide, based on those facts, whether the Debtor's lease was terminated prepetition, thereby precluding the Debtor from assuming its lease under Bankruptcy Code § 365.

The Court concludes the Debtor's lease was not terminated prepetition. Mere entry of a final judgment for possession or issuance of a writ of possession—without more—does not terminate a lease. And here, the landlord's notice purportedly terminating the lease was ineffective because the landlord could not prove the Debtor actually defaulted under the lease. Accordingly, the Debtor has the right to assume its commercial lease under Bankruptcy Code § 365.

**Background**

The Debtor, 2408 W. Kennedy, LLC, owns and operates a nightclub located at 2408 W. Kennedy Boulevard, Tampa, Florida. The Debtor leases that location from 2408 Kennedy Blvd.

Property, Inc. (the "Landlord").[1] The original lease for the property expired on August 30, 2012. But the Debtor exercised its option to extend the lease term for an additional five years (through August 31, 2017).[2]

Although the specifics are not important for purposes of this case, it appears that the Debtor failed to pay the required monthly rent due under the lease.[3] The Debtor only paid partial rent for July and September 2012.[4] And the Debtor failed to make any regular monthly lease payments after September 2012.[5] The Landlord notified the Debtor of its failure to pay the required rent under the lease in a December 8, 2012 notice.[6]

Significantly, the Landlord also cited to paragraph 19(f) of the lease in its December 8 notice.[7] Paragraph 19(f) is a cross-default provision providing that a default under a $165,000 promissory note the Debtor executed in favor of Blue Penguin, Inc. constitutes a default of the Debtor's lease with the Landlord.[8] According to the Landlord, the Debtor had defaulted on the Blue Penguin promissory note, and based on that alleged default, the Landlord claimed the lease was "no longer in effect" and that the Debtor was "occupying the premises as a Tenant at Will."[9]

---

[1] Debtor's Ex. 1. Actually, the lease was originally between the Debtor and Eugene O'Steen. O'Steen later conveyed the property to the Landlord. Despite the similarity of their names, the Debtor and the Landlord are not affiliated. To avoid any confusion, the Court will refer to the parties as "the Debtor" and "the Landlord."

[2] Debtor's Ex. 1 at ¶¶ 1 & 26.

[3] Landlord's Ex. 1 at ¶¶ 5-7.

[4] *Id.*

[5] *Id.*

[6] Landlord's Ex. 8.

[7] *Id.*

[8] Debtor's Ex. 1 at ¶ 19(f).

[9] Landlord's Ex. 8.

In the December 8 notice, the Landlord insisted that the Debtor continue paying rent going forward under the purported month-to-month tenancy. But the Debtor apparently failed to pay rent for December 2012 and January 2013.[10] So the Landlord served the Debtor with a three-day pay-or-quit notice on January 25, 2013, notifying the Debtor it owed $88,155.62 in past-due rent and that it had three days to bring the past-due rent current or vacate the premises.[11] When the Debtor failed to pay the past-due rent demanded in the January 25 notice, the Landlord sued to recover possession of the premises in state court.[12]

The state court immediately entered an order obligating the Debtor to pay $34,260.98 in past-due rent into the court registry by March 25, 2013.[13] The order also obligated the Debtor to continue paying $17,130.40 in monthly rent into the court registry on the fifth day of each month while the eviction action was pending.[14] The order expressly provided, consistent with section 83.232, Florida Statutes, that any failure to timely pay the past-due rent or future rent into the court registry would constitute an absolute waiver of the Debtor's defenses to the Landlord's claim for possession.[15]

The Debtor paid the $34,260.98 in past-due rent, as well as the rent for April – July 2013, into the court registry. The Debtor, however, missed the August payment by one day. That payment was due by 5:00 p.m. on August 5, 2013. But the Debtor did not deposit the payment into the Court registry until 8:00 a.m. on August 6, 2013. Because the Debtor failed to timely

---

[10] Landlord's Ex. 1.

[11] *Id.*

[12] *Id.*

[13] Landlord's Ex. 5.

[14] *Id.*

[15] *Id.*

make one of its rent payments, the state court entered a default judgment for possession on August 8, 2013, and the clerk of court issued a writ of possession that same day.[16]

The Debtor immediately sought a stay of the writ of possession. The state court took the Debtor's request under advisement. Shortly thereafter, the state court ruled that the Landlord was, in fact, entitled to possession of the premises and ordered the Debtor to vacate the premises by August 16, 2013.[17] On August 15, 2013, one day before the deadline for vacating the premises expired, the Debtor filed for bankruptcy.[18]

The Landlord then moved to dismiss this bankruptcy case as a bad-faith filing and sought stay relief so it could retake possession of the premises.[19] The crux of the Landlord's stay relief motion is this: the Debtor needs the premises to operate its nightclub, but it cannot assume the lease for the premises since it was terminated prepetition. The Debtor does not dispute the general proposition that it cannot assume a terminated lease. Instead, the Debtor simply disputes that the lease was terminated. This Court must now decide whether the Landlord terminated the lease prepetition.

The Landlord contends the lease was terminated twice: first, when the Landlord notified the Debtor of its alleged default under the Blue Penguin note; second, when the state court entered its final judgment for possession and the clerk of court issued a writ of possession. The Court concludes that the lease was not terminated in either instance.

---

[16] Landlord's Exs. 6 & 7.

[17] Debtor's Ex. 6.

[18] Doc. No. 1.

[19] Doc. Nos. 20 & 21.  The Landlord withdrew its Motion to Dismiss in open court at a hearing on April 23, 2014.

**Conclusions of Law**

Entry of a final judgment for possession or issuance of a writ of possession does not terminate a lease.[20] Several courts have held that the mere issuance of a writ of possession, without more, does not preclude a debtor from assuming a lease under Bankruptcy Code § 365. For example, over twenty years ago, Judge Paskay ruled in two different cases (decided eight days apart) that a debtor could assume a commercial lease because it had not been validly terminated prepetition even though the debtor's landlord had obtained both a judgment for possession and writ of possession.[21] As Judge Paskay explained, neither a final judgment for possession nor a writ of possession terminates a lease; they simply grant the landlord the right to retake possession of the premises.[22] To understand why that is true, it is important to consider the remedies traditionally available to a landlord in the event of default.

At common law, a landlord in Florida ordinarily has three remedies in the event of default:[23] First, the landlord may terminate the lease and retake possession of the premises for his own use. Second, the landlord may retake possession of the premises on account of the tenant and hold the tenant accountable for the difference between the rent that was due under the lease and the rent actually received from a replacement tenant during the remainder of the lease term.

---

[20] *In re GISC, Inc.*, 130 B.R. 346, 348-49 (Bankr. M.D. Fla. 1991); *In re Stress Simulation Sys., Inc.*, 130 B.R. 351, 353 (Bankr. M.D. Fla. 1991); *see also In re Spice Modern Steakhouse*, 2011 WL 5563545, at *1-2 (Bankr. M.D. Fla. Oct. 20, 2011) (holding that a lease had not been terminated even though a writ of possession had been issued but not executed).

[21] *GISC, Inc.* 130 B.R at 348-49; *Stress Simulation Sys., Inc.*, 130 B.R. at 353.

[22] *Stress Simulation Sys., Inc.*, 130 B.R. at 353.

[23] *Coast Fed. Sav. & Loan Ass'n v. DeLoach*, 362 So. 2d 982, 984 (Fla. 2d DCA 1978); *see also GISC*, 130 B.R. at 348 (citing *Coast Fed. Sav. & Loan Ass'n*, 362 So. 2d at 984).

Third, the landlord may hold the tenant liable (i.e., sue the tenant) for each payment as it becomes due. Only the first remedy involves terminating the lease.[24]

By affirmatively terminating the lease and retaking possession of the premises for his own use, the landlord has cut off the tenant's obligation to pay any future rent under the lease.[25] If the landlord simply retakes possession of the premises on account of the tenant, the tenant's obligation to pay the rent due for the duration of the lease term remains. That is the crucial distinction between the first two remedies. Termination of the lease is what cuts off the tenant's obligation to pay future rent. Regardless of which remedy the landlord elects, the writ of possession merely affects the tenant's right to possess the property.[26] If entry of a judgment for possession or issuance of a writ of possession "terminated" the lease, then a tenant could never be liable for future rent when a landlord successfully recovered possession of the premises. So it is only a landlord's affirmative act—not entry of a final judgment for possession or issuance of a writ of possession—that terminates a lease.

The Court is aware of at least one decision holding that a debtor cannot assume a lease if a writ of possession was issued prepetition, regardless of whether the writ was executed.[27] In *In re Key Largo Watersports*, the court somewhat correctly explained that a "judgment of eviction

---

[24] The Debtor argued previously that the Landlord did not have the right to terminate the lease. While a landlord has a right to terminate a lease at common law, a landlord is limited to the remedies prescribed in the lease with the tenant. Here, the lease specifically provides that no "termination or retaking of possession shall relieve [the Debtor] of its liability and obligations under this Lease." Because the lease provides that the Debtor remains liable for all future rent in the event of default, the Debtor contends the Landlord is precluded from terminating the lease. The Court need not decide that issue since it has determined the Landlord never actually terminated the lease.

[25] *Coast Fed. Sav. & Loan Ass'n*, 362 So. 2d at 984 (explaining that the "lessor may treat the lease as terminated and retake possession for his own account, thus terminating any further liability on the part of the lessee"); *Hulley v. Cape Kennedy Leasing Corp.*, 376 So. 2d 884, 887 (Fla. 5th DCA 1979) (holding that proof of lease termination "would constitute a defense to the recovery of rents accruing after appellee's resumption of possession").

[26] *Stress Simulation Sys., Inc.*, 130 B.R. at 353.

[27] *In re Key Largo Watersports, Inc.*, 377 B.R. 738 (Bankr. S.D. Fla. 2007).

does not necessarily terminate a lease for all purposes."[28] That is partially correct because, as explained above, a landlord may elect to retake possession of the premises—rather than terminate the lease—and hold the tenant responsible for the difference between the rent due under the lease and the amount the landlord receives from a replacement tenant.[29] But after recognizing that a judgment for eviction does not terminate a lease, the *Key Largo Watersports* court erroneously concludes that a judgment for eviction precludes a debtor from assuming a lease in bankruptcy because the eviction judgment terminates the debtor's right of possession.[30]

Under Florida law, it is not the eviction judgment that terminates the debtor's right of possession. Several bankruptcy courts (applying Florida law) have held that the eviction process is not complete under state law until the tenant is dispossessed from the property.[31] And according to those courts, it is execution of the writ of possession that dispossesses the tenant under Florida law. Until the writ of possession is executed, the tenant has a right to retain possession of the leased premises.[32]

In fact, several courts have recognized that Florida's anti-forfeiture doctrine can prevent removal of a tenant in possession of real property even after entry of a judgment for possession.[33]

> Under Florida law, equity will afford relief against the forfeiture of a lease "whenever it is just and equitable to do so; the only condition precedent . . . being the tender of the arrears of rent with accrued interest." Equity will afford relief even when the lessor has obtained a judgment of possession. Therefore, even if a judgment

---

[28] *Id.* at 740.

[29] *Id.*; *see also Coast Fed. Sav. & Loan Ass'n*, 362 So. 2d at 984.

[30] *Key Largo Watersports, Inc.*, 377 B.R. at 741.

[31] *In re Hobbs*, 221 B.R. 892, 894 (Bankr. M.D. Fla. 1997).

[32] *Id.*

[33] *Ross v. Metro. Dade Cnty.*, 142 B.R. 1013, 1016 (S.D. Fla. 1992).

> of possession amounts to completion of the termination process, that process can be reversed under Florida's anti-forfeiture doctrine. Consequently, the lease would not be "expired" for purposes of section 365, and the trustee may still assume the lease.[34]

For that reason, this Court concludes that entry of a judgment for possession or issuance of a writ of possession—without more—does not terminate a lease or otherwise preclude a debtor from assuming the lease under § 365.

The Court must now decide whether the December 8 notice terminated the lease. The Landlord claims it had the right to terminate the lease because the Debtor defaulted under its note with Blue Penguin. There is no dispute that paragraph 19(f) of the parties' lease provides that a default on the Blue Penguin note is a default under the lease. Likewise, there is no dispute the December 8 notice purports to terminate the lease based on a default of the Blue Penguin note. The Landlord claims the default judgment for possession precludes the Court from looking behind the December 8 notice to see if the Debtor actually defaulted on the Blue Penguin note.

The Court disagrees. It is true that entry of a default under Florida Rule of Civil Procedure 1.500 conclusively establishes the well-pled allegations of the complaint as true.[35] And one of those well-pled allegations was that the Landlord terminated the lease on December 8, 2012, and that the Debtor remained in the premises as a tenant-at-will on a month-to-month tenancy. But Rule 1.500 only comes into play when a defendant fails to file or serve any paper in an action.[36] Here, the Debtor timely responded to the Landlord's complaint for possession and

---

[34] *Id.* (internal citations omitted); *In re Atkins*, 237 B.R. 816, 819 (Bankr. M.D. Fla. 1999). Admittedly, these cases discussing Florida's anti-forfeiture public policy involve residential leases. But Florida courts have held that the anti-forfeiture policy applies equally in commercial cases, including after a judgment for possession. *See, e.g., Nevins Drug Co. v. Bunch*, 63 So. 2d 329, 332-33 (Fla. 1953); *Smith v. Winn Dixie Stores, Inc.*, 448 So. 2d 62, 64 (Fla. 3d DCA 1984);

[35] *Abrams v. Paul*, 453 So. 2d 826, 831 (Fla. 1st DCA 1984).

[36] Fla. R. Civ. P. 1.500.

damages. The default in the state court case was entered because the Debtor failed to deposit its monthly rent into the court registry under section 83.232.

Under section 83.232, the failure to deposit rent into the registry of the court is deemed an absolute waiver of all of the tenant's defenses to the landlord's claim for possession.[37] Section 83.232 says nothing about the well-pled allegations of the complaint being deemed true.[38] In fact, if failure to pay rent into the court registry resulted in the well-pled allegations of the complaint being deemed admitted, then the landlord ought to be entitled to a judgment for possession *and* money damages. But the case law in Florida is clear that failure to pay rent into the court registry only entitles a landlord to a default judgment for possession.[39] That is because the purpose of that statute is to prevent a commercial tenant from remaining in the premises during an eviction action without paying rent—not as a penalty for failing to defend an action.[40] So the Court is not precluded from considering whether the Debtor actually defaulted on the Blue Penguin note.

---

[37] § 83.232(5), Fla. Stat.

[38] *Id.* The Landlord principally relied on one case for the proposition that a default under section 83.232 results in the well-pled allegations of the complaint being deemed true: *Wenboy Ltd. P'ship v. Rockledge Bar-B-Q, Inc.*, 619 So. 2d 414 (Fla. 5th DCA 1993). In fact, that case does not stand for that proposition at all. The default in that case was entered because the tenant failed to timely file an answer. *Id.* at 415. While the tenant did file a motion to dismiss, section 51.011(1), Florida Statutes (a summary proceedings statute applicable to eviction proceedings), requires a tenant to file an answer within five days of being served with the complaint, regardless of whether the tenant files a motion to dismiss. Because the tenant failed to timely respond to the complaint, the trial court accepted all of the well-pled allegations of the complaint as true. *Id.* at 415-16.

[39] *Premici v. United Growth Props.*, 648 So. 2d 1241, 1243 (Fla. 5th DCA 1995).

[40] *Id.*

And in considering that issue, the Court concludes the Landlord failed to establish at trial that the Debtor, in fact, defaulted on the Blue Penguin note before the December 8 termination notice.[41] To the contrary, the Debtor offered persuasive evidence that it made all of the principal payments on the Blue Penguin note.[42] In particular, the evidence unequivocally demonstrates the Debtor had timely made every payment from September 1, 2007 (the first payment due under the note) through November 2009.[43] The alleged default—ultimately leading to the purported termination—arises out of the Debtor's alleged failure to pay late charges.

According to the note, the monthly payments were due on or before the fifth day of each month.[44] The Debtor, however, made the December 2009 payment on December 7, 2009—two days after the deadline.[45] So the Landlord apparently assessed $169.26 in late charges.[46] It is the unpaid late charges for December 2009 that gave rise to the December 8 termination notice—sent out one day after the Debtor's payment—purportedly terminating the lease.

But the evidence at trial established that those late charges were not assessed on a current basis. It is important to note that late charges are not automatic under the note. The note provides that a delinquent payment "may" result in a five percent late charge.[47] Had Blue Penguin sent the

---

[41] At trial, there was evidence presented about whether the Debtor defaulted on the Blue Penguin note after December 8, 2012. But that evidence is relevant. The Court is only concerned with whether the December 8 notice effectively terminated the lease. What happened after December 8 could not possibly have any bearing on that issue.

[42] Debtor's Ex. 8. Debtor's Exhibit 8 includes the Landlord's responses to the Debtor's interrogatories. One of those interrogatories asked the Landlord to list every payment the Debtor made on the Blue Penguin note. The attached list of payments reflects the Debtor made the principal monthly payment for every single month.

[43] *Id.*

[44] Debtor's Ex. 2.

[45] Debtor's Ex. 8.

[46] *Id.*

[47] Debtor's Ex. 2.

Debtor a notice that it was assessing a late charge, and the Debtor ultimately failed to pay the late charge, that could have given rise to a default under the note. The evidence at trial, however, showed that Blue Penguin did not asses any late charges until after this bankruptcy case was filed. Absent evidence that Blue Penguin assessed the late charge for December 2009 before the December 8 notice, the Court concludes the Landlord failed to establish that the Debtor defaulted on the Blue Penguin note, and as a consequence, the alleged default on the note could not have formed the basis of the lease termination.

Even if the Debtor had defaulted on the Blue Penguin note, the Court concludes the Landlord failed to meet its burden of proving the December 8 notice effectively terminated the lease. The Landlord's conduct after the December 8 notice is inconsistent with its current contention that the December 8 notice terminated the lease and left the Debtor as a month-to-month tenant. For instance, the Landlord's January 25, 2013, default notice purports to provide notice of termination *under paragraph 19 of the lease*.[48] And neither of the Landlord's follow-up letters—dated February 1 and 6, 2013—made any reference to the written lease being terminated. Given the Landlord's ambiguous conduct after the December 8 notice, the Court concludes the Landlord failed to effectively terminate the lease irrespective of any purported default under the Blue Penguin note.

## Conclusion

Because the Landlord failed to establish that the Debtor defaulted on the Blue Penguin note, the Landlord's December 8 notice did not effectively terminate the lease. So the Debtor has a leasehold interest in the premises and the right to assume the lease if it is able to satisfy the other requirements of Bankruptcy Code § 365. Accordingly, the Landlord's motion for stay relief

---

[48] Debtor's Ex. 5.

should be denied to the extent it seeks a determination that the lease was terminated prepetition and authorization to conclude the eviction proceedings by having the sheriff execute the writ of possession.[49] The Court will enter a separate order consistent with this Memorandum Opinion.

**DATED**: _____July 01, 2014_____.

_____

Michael G. Williamson
United States Bankruptcy Judge

Attorney Leon A. Williamson, Jr. is directed to serve a copy of this order on interested parties and file proof of service within 3 days of entry of this order.

**Leon A. Williamson, Jr., Esq.**
**Leon A. Williamson, Jr., P.A.**
*Counsel for Debtor*

**Thomas A. Smith, Esq.**
*Counsel for 2408 Kennedy Blvd. Property, Inc.*

---

[49] The Court, however, will grant the motion for stay relief to the extent it seeks authorization for the state court clerk of court to release any funds in the court registry to the Landlord.